JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

HEATHER ENDRESEN,

    Plaintiff,

  v.

BANC OF CALIFORNIA, INC., et al.,

    Defendants.

Case No.: SACV 18-00899-CJC(DFMx)

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS**

## I. INTRODUCTION

    Plaintiff Heather Endresen brings this lawsuit against her former employer, Defendants Banc of California, Inc. and Banc of California, N.A. (Dkt. 1 [Complaint, hereinafter "Compl."].) Before the Court is Defendants' motion to compel arbitration

and stay the proceedings. (Dkt. 12 [Motion, hereinafter "Mot."].) For the following reasons, the motion is **GRANTED** as to Plaintiff's claims, except for Plaintiff's claim under the Sarbanes-Oxley Act. The case is **STAYED** pending resolution of arbitration.[1]

## II. BACKGROUND

In this lawsuit, Plaintiff asserts a variety of claims under the Sarbanes-Oxley Act and state law for alleged wrongful termination and whistleblower retaliation after Plaintiff made complaints about her employer's accounting practices and workplace misconduct. (*See generally* Compl.) Defendant Banc of California, Inc. is a bank holding company incorporated in Delaware and headquartered in Santa Ana, California. (*Id.* ¶ 6.) Defendant Banc of California, N.A. is a national bank with its principal place of business in Santa Ana, California. (*Id.* ¶ 7.) Plaintiff worked for Defendants (collectively, "Banc") from March 2014 to May 2017. (*Id.* ¶ 5.)

Banc hired Plaintiff as the Senior Vice President of SBA Lending on March 17, 2014. (*Id.* ¶ 12.) In April 2015, Plaintiff was promoted to Managing Director of SBA Lending. (*Id.* ¶ 13.) At the same time, Plaintiff entered into a written employment agreement (the "Agreement") with Banc. (*Id.*) The Agreement provides:

> The claims covered by this Agreement, and subject to arbitration, include but are not limited to any and all legal or equitable claims, actions, controversies, disputes, or requests for relief of any type, whether asserted or unasserted, now in existence or that may arise in the future, arising out of or relating in any way to Employee's employment or termination of employment by the Company . . . .

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 24, 2018 at 1:30 p.m. is hereby vacated and off calendar.

(Dkt. 12-2 [Declaration of Michael Urtel, hereinafter "Urtel Decl."] ¶ 3; *id.* Ex. A.)

Plaintiff asserts several kinds of wrongdoing that generated her complaints to Banc's human resources and in-house legal counsel.

First, Plaintiff alleges that Banc engaged in accounting irregularities to misreport its income in public filings. In early 2017, Banc's management purportedly engaged in a scheme to inflate Banc's 2017 first quarter earnings. (Compl. ¶¶ 28–30.) When Banc's upper management and board of directors discovered that Banc was at serious risk of failing to meet its earnings expectations, they allegedly reneged on the company's obligations to pay accrued 2016 bonuses and failed to report these obligations as a contingent liability. (*Id.*) Plaintiff was concerned that these actions violated the Sarbanes-Oxley Act. (*Id.* ¶ 41.)

Second, Plaintiff alleges that Banc's CFO engaged in misconduct. The CFO allegedly misappropriated corporate funds by paying for employees, clients, and analysts to go to strip clubs on Banc's dime. (*Id.* ¶ 46.) Plaintiff also made complaints regarding the CFO's alleged illegal drug use. (*Id.* ¶ 47.)

Third, Plaintiff alleges that Banc created a hostile work environment for female employees. Plaintiff complained of male employees having sex with women in their work offices and visiting strip clubs with employees. (*Id.* ¶ 46.)

Based on this purported misconduct, Plaintiff made multiple complaints and called Banc's whistleblower hotline. (*Id.* ¶¶ 41–59.) These complaints were of no avail. Plaintiff alleges that Banc failed to adequately investigate and respond to her complaints. Banc allegedly retaliated against Plaintiff by cutting her pay, attacking her credibility,

and marginalizing her to the point where she could no longer effectively perform her job. (*Id.* ¶ 66.) Plaintiff left the company on May 29, 2017. (*Id.* ¶ 67.)

Plaintiff filed this action in federal court on May 23, 2018. (Dkt. 1.) Plaintiff asserts eight causes of action: (1) wrongful termination in violation of the Sarbanes-Oxley Act (18 U.S.C. § 1514A), (2) whistleblower retaliation (Cal. Labor Code § 1102.5), (3) wrongful termination in violation of public policy, (4) unlawful harassment and retaliation in violation of the California Fair Employment and Housing Act (Cal. Gov't Code §§ 12940 *et seq.*), (5) breach of contract, (6) breach of the implied covenant of good faith and fair dealing, (7) failure to pay all wages due upon termination (Cal. Lab. Code §§ 201, 203), and (8) violation of California's unfair competition law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). (*See generally* Compl.)

On August 22, 2018, Banc filed the present motion to compel arbitration. (Mot.) Banc concedes that Plaintiff's claim under the Sarbanes-Oxley Act ("SOX") is nonarbitrable, but seeks to compel arbitration of her remaining claims and stay the case in the interim. (*Id.* at 2.) Plaintiff filed her opposition on September 5, 2018.[2] (Dkt. 18 [Opposition, hereinafter "Opp'n"] at 2.)

//
//

---

[2] Plaintiff did not file her opposition by the deadline. Local Rule 7-12 states: "The Court may decline to consider any memorandum or other paper not filed within the deadline set by order or local rule. The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." Accordingly, the Court could grant Defendants' motion on this ground alone. In any event, the Court will now address the merits of Defendants' motion instead of relying solely on Plaintiff's procedural default.

## III. DISCUSSION

### A. Arbitrability of Claims

Under the Federal Arbitration Act ("FAA"), a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

The parties dispute whether SOX prevents the arbitration of Plaintiff's state law claims. Banc concedes that Plaintiff's SOX claim cannot be arbitrated under SOX's anti-arbitration provision, 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration provision shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."), but moves to compel arbitration of the rest of Plaintiff's claims. (Mot. at 3.) Plaintiff argues that arbitration of her remaining claims, which share a common nucleus of operative facts with her SOX claim, would "undermine" SOX's anti-arbitration provision. (Opp'n at 2.)

//
//

### 1. Validity of Agreement

The Court must first determine whether there is a valid agreement to arbitrate. *Kilgore*, 718 F.3d at 1058. Plaintiff does not assert that the Agreement itself is unconscionable. (*Id.* at 2.) Rather, Plaintiff argues that SOX's anti-arbitration provision precludes arbitration of the rest of her claims, since these claims are intertwined with her SOX claim. (*Id.* at 3.)

When a complaint contains both arbitrable and nonarbitrable claims, courts must compel arbitration of pendent arbitrable claims when a party files a motion to compel, even if "the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter*, 470 U.S. at 217. The FAA requires courts to "examine a complaint with care to assess whether any individual claim must be arbitrated." *KPMG, LLP v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam) ("[A] court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.").

Here, the Court must analyze Plaintiff's non-SOX claims separately from her SOX claim in order to determine whether the claims are arbitrable. Denying arbitration on some claims because there are also nonarbitrable claims ignores the FAA's "emphatic federal policy" in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

Plaintiff argues that SOX's anti-arbitration provision should apply to her non-SOX claims. Although the FAA's mandate may be "overridden by a clear congressional command," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), there is no clear congressional mandate here. SOX's anti-arbitration provision specifically refers to "dispute[s] *arising under this section*." 18 U.S.C. § 1514A(e)(2) (emphasis added).

Plaintiff's non-SOX claims arise under state law, not section 1514A. SOX's anti-arbitration provision does not apply to Plaintiff's non-SOX claims. *Cf. Pompliano v. Snap Inc.*, 2018 WL 3198454, at *6 (C.D. Cal. Apr. 11, 2018) (finding that SOX's anti-arbitration provision did not apply to a Dodd-Frank claim and collecting other cases where courts reached similar conclusions).

Plaintiff cites to two out-of-circuit decisions that held SOX's anti-arbitration provision precludes arbitration of state law claims that arise from the same nucleus of operative facts as a SOX claim. *See Laubenstein v. Conair Corp.*, 2014 WL 6609164 (W.D. Ark. Nov. 19, 2014); *Stewart v. Doral Fin. Corp*, 997 F. Supp. 2d 129 (D.P.R. 2014). Both *Laubenstein* and *Stewart* held that compelling arbitration is inappropriate when a non-SOX claim is "entangled with" and "arise[s] from the same nucleus of operative facts" as a SOX claim because arbitration of the non-SOX claims would "frustrate the purpose of 18 U.S.C. § 1514A(e)(2) . . . [and] place a substantial financial and temporal burden on all parties involved." *Stewart*, 997 F. Supp. 2d at 140.

The Court declines to follow these decisions. To do otherwise would ignore section 1514A(e)(2)'s express limitation to disputes arising under that section. Moreover, it is not clear why arbitration of non-SOX claims would frustrate any purpose of section 1514A, since Plaintiff's SOX claim still remains before the court. *See Wiggins v. ING U.S., Inc.*, 2015 WL 3771646, at *7 (D. Conn. June 17, 2015) (refusing to follow *Stewart* and *Laubenstein*). It is also not obvious that arbitration would pose a "substantial financial and temporal burden," as one of arbitration's main justifications is that it reduces such burdens. *See id.*; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (discussing how arbitration "reduc[es] the cost and increase[es] the speed of dispute resolution"). And the Supreme Court in *Dean Witter* explicitly rejected efficiency concerns as a basis for refusing to compel arbitration on some claims when other claims are not arbitrable. 470 U.S. at 217.

### 2. Agreement Encompasses Dispute at Issue

The Court next must determine whether the Agreement encompasses the dispute at issue. *Kilgore*, 718 F.3d at 1058. The Agreement between Plaintiff and Banc extends to "any and all legal or equitable claims, actions, controversies, disputes, or requests for relief of any type . . . arising out of or relating in any way to [Plaintiff's] employment or termination of employment." (Urtel Decl. Ex. A.) Plaintiff's allegations relate solely to her employment at Banc and subsequent termination. Her non-SOX claims for whistleblower retaliation, wrongful termination, unlawful harassment and retaliation, breach of contract, breach of the implied covenant, failure to pay all wages due upon termination, and violations of California's unfair competition law all arise out of her employment at Banc. The Court finds the Agreement encompasses the dispute at issue.

Since there is a valid arbitration agreement that encompasses the dispute at issue, the Court must compel the arbitration of Plaintiff's non-SOX claims.

### B. Stay of Claims Pending Arbitration

Banc asks the Court to stay this litigation, pending resolution of arbitration. "[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The power to stay a case "calls for the exercise of a sound discretion" and a weighing of "competing interests." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among those interests are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

When "independent proceedings . . . bear upon [a] case," a trial court may, "with propriety, find it efficient for its own docket and the fairest course for the parties to enter a stay" pending resolution of the independent proceedings. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64. When an action involves arbitrable and nonarbitrable disputes, a court may avoid "a duplication of effort in trying simultaneously, or even successively" the issues in the complaint by staying the litigation of all claims pending the outcome of arbitration. *See, e.g.*, *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985). Courts may consider whether arbitrable claims predominate the dispute or whether the outcome of nonarbitrable claims will depend upon the arbitrator's decision. *Global Live Events v. Ja-Tail Enters., LLC*, 2014 WL 1830998, at *3 (C.D. Cal. May 8, 2014). A court may also prefer to allow arbitration to proceed first where "the type of controversy . . . involved seems one well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration." *Newton*, 750 F.2d at 1427.

The circumstances here warrant a stay of proceedings on Plaintiff's SOX claim until the resolution of arbitration on Plaintiff's non-SOX claims. Plaintiff herself characterizes the seven non-SOX claims as intertwined with her SOX claim. (Opp'n at 3.) In the interest of judicial economy and efficiency, the parties should first resolve the arbitrable claims, in order to avoid duplication of effort as Plaintiff's claims proceed on separate tracks. Moreover, Plaintiff's seven non-SOX claims predominate over her one SOX claim. Plaintiff's SOX claim, for instance, alleges that Banc retaliated against Plaintiff, but this factual issue will necessarily be resolved through arbitration of Plaintiff's other arbitrable claims for whistleblower retaliation and wrongful termination. (*See generally* Compl.) Staying the case on Plaintiff's SOX claim avoids inconsistent

results. This employment dispute is also the kind of controversy that is well-suited to arbitration's informal and expeditious proceedings. *See, e.g., Jaffe v. Zamora*, 57 F. Supp. 1244, 1248 (C.D. Cal. 2014) (enforcing an arbitration clause in an employment agreement and staying the plaintiff's other claims).

Plaintiff argues that staying her SOX claim pending arbitration of her non-SOX claims would "undermine the policy decision of Congress" to limit arbitration of SOX claims. (Opp'n at 6.) Plaintiff's SOX claim, however, remains before this court. The two cases cited by Plaintiff where courts did not stay litigation of SOX claims, *Wussow v. Bruker Corp.*, 2017 WL 2805016 (W.D. Wis. June 28, 2017), and *Murray v. UBS Sec., LLC*, 2015 WL 769586 (S.D.N.Y. Feb. 24, 2015), relied on the assumption that a stay "would . . . effectively deny[] plaintiff the right to a federal forum in substantial part." *See Wussow*, 2017 WL 2805016, at *9. Both cases, however, involved arbitration of a Dodd-Frank claim, which more closely parallels SOX's cause of action than Plaintiff's employment claims here. In any case, staying the case will not deny Plaintiff her right to a federal forum, since she will still litigate her SOX claim in federal court.

//
//

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and stay the case is **GRANTED**. This action shall be **STAYED** pending completion of arbitration.

DATED: September 20, 2018

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE